## HURST and others *v.* COLEY.*

(*Circuit Court, S. D. Georgia, W. D.* December 16, 1882.)

1. **TROVER AGAINST PLEDGEE.**

    Where notes and mortgages were given by a debtor to a creditor as collateral security for a debt, and the creditor redelivered the notes and mortgages to the debtor, to be by him collected for the creditor's account, the statutory action, which is a substitute for the action of trover, will lie against such debtor or pledgee, where the latter fails to return or account for the collaterals on demand.

2. **SAME—HOW AFFECTED BY DEFENDANT'S AGENCY.**

    In such case it makes no difference that the original debt grew out of transactions between the creditor and defendant acting as agent of his wife, in a business conducted by him. An agent may be charged in trover; his agency is no defense.

3. **AMENDMENT.**

    To a suit brought for such written securities, an amendment declaring for their proceeds is germane.

4. **MEASURE OF DAMAGES.**

    In such a suit the measure of damages (for which the statute allows an alternative verdict) is the plaintiff's interest in the collaterals, which interest cannot exceed the debt or the value of the collaterals.

5. **VERDICT—IMPEACHMENT BY JURORS.**

    Jurors cannot be heard to impeach their verdicts by affidavits as to mistakes made by them in arriving at a verdict.

At Law. On motion for a new trial and motion in arrest.

The case is very fully reported in the written decision. To that report it may be added that the original declaration in the prescribed statutory form under the Code of Georgia, which is a substitute for the action of trover, alleged that the defendant, J. A. D. Coley, was in possession of certain written securities which had been turned over to him by plaintiff for collection for their account, etc. The defendant filed an answer to the plaintiff's ancillary proceeding for

*Reported by W. B. Hill, Esq., of the Macon bar.

bail, in which he set up that he had collected a large amount of the securities, but had not done so in his individual capacity, as sued, but as agent for his wife. Prior to the filing of this answer, defendant had not accounted for these securities. Upon the coming in of this answer, the plaintiff amended his writ so as to sue for the *proceeds* of the securities so collected. This amendment the court ruled was germane to the original cause of action and was allowable. The amendment, however, was afterwards withdrawn, owing to rulings made on other points. The following is a copy of the second plea, mainly relied on by the defendant:

"And for further plea in this behalf the defendant says that if he ever gave the said plaintiffs any receipt, such as that described in said suit, he did not do so on his own individual account, on his individual responsibility, or for any consideration moving to him individually, but solely as the agent of Mrs. Charlotte T. Coley, in the course of conducting her business as a merchant and trader, for her account, upon her responsibility, and upon a consideration alone moving to her; the agency of this defendant in the premises, and his authority to act therein from the said Charlotte T. Coley, being then and before that time, to-wit, the day said receipt purports to have been given, well known to and recognized and acted on by said plaintiff," etc.

*Hill & Harris* and *J. A. Thomas*, for plaintiffs.

*Lanier & Anderson* and *L. C. Ryan*, for defendant.

PARDEE, J. The 29 grounds assigned for a new trial and in arrest of judgment in this case may be arranged under the following heads:

(1) Error of the judge (*a*) in sustaining demurrer to defendant's second plea; (*b*) in allowing plaintiff to amend by adding a second count; (*c*) in rejecting evidence; (*d*) in instructions given to the jury, and in neglecting to give certain instructions to the jury; (*e*) in allowing the plaintiff's counsel to write out the verdict rendered in the case.

(2) Error of the jury—the verdict being informal and illegal; and (*a*) contrary to law; (*b*) contrary to the evidence; (*c*) contrary to the charge of the court; (*d*) not responsive to the issues in the case.

(3) Misconduct in impaneling the jury to the prejudice of the defendant.

There are affidavits submitted from nearly all the jurors to the effect that some did and some did not understand the issues involved in the case, and the force and effect of the verdict found by them; but I do not find that movant makes any point on this. And I further understand that the grounds referring to the manner of impaneling the jury are withdrawn. If I am wrong in this, then the questions are disposed of by saying that jurors will not be heard to impeach their own verdict; and that the affidavits show no misconduct on the part of any one in the matter of impaneling the jury.

The demurrer to defendant's second plea was properly sustained, because the matters alleged in said plea, if true, constitute no defense to the plaintiff's action. The defendant was sued for the wrongful conversion of certain notes and mortgages belonging to the plaintiffs. The plea admits the conversion, but sets up that in the matter he was acting as the agent of his wife, all to the knowledge of the plaintiffs.

"The gist of the action of trover is the wrongful conversion of the property of the plaintiff by the defendant. The wrongful detention of the property is a conversion, and in a tortious act all are principals and equally liable. A servant may be charged in trover, though the conversion be done by him, however innocently, for the benefit of the master, and it is immaterial whether he had his master's authority or not. Leigh, Nisi Prius, 1480; *Stephens* v. *Elwall*, 4 Maule & S. 259." *Porter* v. *Thomas*, 23 Ga. 471; Georgia Code, § 2213.

Whatever error there may have been in allowing the plaintiffs to amend, and I am unable to perceive any, was fully corrected by the withdrawal by plaintiffs' counsel during the trial, and before the jury retired, of the obnoxious amendment. The only evidence rejected on the trial, against the defendant, was evidence wholly in support of the second plea, to which a demurrer was properly sustained. But in fact, as the record shows, the evidence showing defendant's business relations with his wife, and his agency, and the knowledge of the plaintiffs, was all before the jury, notwithstanding the adverse ruling of the court. No requests on the part of the defendant were made to instruct the jury upon any point, nor were any objections made nor exceptions taken to the charges and instructions given by the judge to the jury. According to the practice of this court, objections to the charge of the judge to the jury come too late if first made after verdict. See Rule 17, Circuit Court Rules. The plaintiffs' counsel was not permitted to write out the verdict and procure the foreman to sign it. The verdict was written out in open court by the foreman himself, in the presence of the other jurors and the counsel on each side, the latter knowing what was being written and making no objection. In fact there was nothing to object to, as the shaping of the verdict was perfectly regular and proper. See Georgia Code, § 3562.

The verdict is for a certain sum as damages.

Upon the trial the plaintiff elected to demand a verdict for damages, and not demand an alternative verdict for the property or its value. This, I understand, is permitted by section 3564 of the Georgia Code.

. I utterly fail to see wherein the verdict is contrary to law, or wherein it is not responsive to the issues. The plaintiff sued for the wrongful conversion to recover certain personal property of the alleged value of $4,250.84. On the trial he elected to demand a verdict for damages alone. The jury find in his favor for $2,849.52, with certain interest from certain dates.

We now come to the grounds that the verdict is contrary to the evidence and to the instruction of the judge. The evidence shows that the defendant received August 1, 1881, sundry notes and mortgages, amounting in principal to $4,501.50, substantially bearing interest from October 1, 1881, from the plaintiff for collection and return proceeds; that plaintiffs owned and held these notes as collateral security of a certain debt or debts of Charlotte Coley, defendant's wife and alleged principal, the original amount of which was not clearly shown; that defendant returned to the amount of $251.46; that defendant had collected or disposed of the remaining notes, and had remitted to plaintiffs as proceeds thereof $1,900; and that plaintiffs' debt against Charlotte Coley, as evidenced by notes offered on the trial, still outstanding, amounted to $2,849.52, with interest from about November 15, 1881.

. It is true that now some opposition is made to the establishment of the remittances amounting to $1,900; but the brief of evidence shows that defendant swore to it unqualifiedly, and plaintiffs offered nothing to dispute him on this point. Indeed, my own recollection is that during the trial I asked counsel for plaintiffs if he denied this amount having been paid, and he replied that he did not dispute it. The jury were instructed in effect that the plaintiffs could recover damages only to the extent of their interest in the property; that as they received the notes only as collateral to a debt due from the defendant, (as the jury were authorized to treat it,) that interest could not exceed the amount of the debt, nor the amount in value of the collateral unaccounted for. The jury found damages to the amount of the debt, as is plain from the verdict. If this amount is in excess of the amount of the deposited notes unaccounted for, it is erroneous to that extent.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| The total amount of the collateral was | - | - | | - | - | - | $4,501 50 |
| Amount of notes returned, | - | - | - | | $ 251 46 | | |
| Remitted, | - | - | - | - | - | 1,900 00 | |
| Collateral accounted for, | - | - | - | | - | - | 2,151 46 |
| Collateral unaccounted for, | - | - | - | | - | - | $2,350 04 |

The verdict is for $2,849.52, and exceeds the value of the notes converted by the sum of $499.48. This calculation is made by adding protest fees found to amount of verdict, and offsetting interest. A verdict will not be disturbed in this court as contrary to the evidence when there was testimony before the jury which, if credited, will support the verdict. In this case there was sufficient before the jury to warrant a verdict for the full amount of the converted notes, but for no greater sum. In finding a verdict for $2,849.52, and interest, the jury went beyond the evidence to the amount of $499.48, and to that extent disregarded the charge of the court. Except for this excess, the verdict does substantial justice between the parties. If there is any real dispute as to the 1,900-dollar remittances, the plaintiffs can take the new trial offered.

The following order will be entered on the motions for a new trial and in arrest of judgment:

For the written reasons on file, it is ordered and adjudged that a new trial be granted in this case, unless the plaintiffs, within 10 days from the filing hereof, shall write off from the verdict and judgment in the sum of $499.48, with interest thereon from November 15, 1881. In case such remitter is entered within the delay aforesaid, the said motions for a new trial and in arrest of judgment are overruled and discharged, with costs.